IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

E. HEDINGER AG and HEDINGER )
MIDDLE EAST DWC LLC, )
 )
        Plaintiffs, )
 )
   v. ) C.A. No. 18-538 (MN)
 )
BRAINWAVE SCIENCE, LLC, )
BRAINWAVE SCIENCE INC., and )
KRISHNA IKA, )
 )
        Defendants. )

## MEMORANDUM OPINION

James D. Taylor, Jr., SAUL EWING ARNSTEIN & LEHR LLP, Wilmington, DE; Robert MHale, R | MCHALE LAW, Boston, MA – attorneys for Plaintiff

David A. Dorey, Craig N. Haring, BLANK ROME LLP, Wilmington, DE; Jason A. Synderman, John Wixted, Huaou Yan, BLANK ROME, LLP, Philadelphia, PA – attorneys for Defendants

February 13, 2019
Wilmington, Delaware

NOREIKA, U.S. DISTRICT JUDGE:

Before the Court is the "Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)" (D.I. 11) filed by Defendants Brainwave Science, LLC, Brainwave Science, Inc., and Krishna Ika (collectively "Defendants" or "Brainwave"). Defendants allege that the Complaint (D.I. 1) filed by Plaintiffs E. Hedinger AG and Hedinger Middle East DWC LLC (collectively "Plaintiffs" or "Hedinger") fails to state a claim upon which relief may be granted "because the parties' partnership agreement requires that any dispute arising from or relating to that agreement be arbitrated" and because of asserted substantive deficiencies in each count (D.I. 12 at 1, 5-9). Although the motion itself seeks dismissal based on the arbitration clause, in its papers, Defendants assert that "this Court should compel arbitration pursuant to 9 U.S.C. § 202 and dismiss the Complaint." (D.I. 12 at 6). Thus, this Court treats Defendants' motion as a motion to compel arbitration as well as to dismiss. For the reasons set forth below, the Court will grant Defendants' motion to dismiss based on the arbitration clause[1] and compel arbitration of the disputes between the parties.

I. **BACKGROUND**

A. Facts

In February of 2016, Plaintiffs "entered into a written contract (the 'Partnership Agreement') with [Defendant Brainwave Science, LLC] to be the exclusive dealer of a brain fingerprinting technology of which [Brainwave Science, LLC] held itself out to be the lawful owner ('BWS Technology')." (D.I. 1 ¶ 12). The Partnership Agreement included the following provisions that are relevant to the motion (D.I. 1, Ex. A):

---

[1] Because the Court finds that dismissal is proper based on application of the arbitration clause in the Partnership Agreement, the Court does not decide the substantive arguments raised with respect to the asserted counts.

1

> **3) Term and Termination**
>
> The agreement shall come into force on **date of execution**. The initial term of this Agreement shall be for a period of three years, commencing on the date of execution and renews automatically until and unless terminated by either parties through written termination notice of 90 days. Upon the date of the termination of the agreement, all legal obligations, rights and duties arising out of this agreement shall terminate.
>
> *   *   *
>
> **19) Applicable Law, Jurisdictional Matters**
>
> D.    The Parties shall exercise their best efforts to resolve by negotiation any and all disputes, controversies or differences between them arising out of or relating to this Agreement. All disputes, controversies or differences between the parties that are not settled by negotiation shall be submitted to International Arbitrary Commission in New York City, U.S.A. The arbitration shall be conducted in English in accordance with International Arbitration rules rules (sic) in effect at the time of applying for arbitration and shall be presided by a panel of three arbitrators, which each party choosing one and the International Court providing the third. The arbitral award is final and binding upon to (sic) both parties.

The Partnership Agreement was executed by Hedinger on February 29, 2016 and by Brainwave on March 1, 2016. (*Id.*). Just over a year later, on March 16, 2017, Brainwave sent a "[n]otice of termination of current agreement between Brainwave Science (BWS) and E. Hedinger AG" stating that Plaintiffs "shall no longer be a partner/reseller/distributor for [BWS] Brain Fingerprinting or any other products." (D.I. 1, Ex. D). In the termination notice, Brainwave stated: "[a]s per section 3 'Term and Termination' of the Partnership agreement, please accept this letter as the official <u>90-day notification</u> specified in our contract" and noted its decision to terminate was based on "a change in business strategy." (*Id.*).

B.   **Procedural History**

Prior to initiating this case, on March 28, 2017, Plaintiffs filed a Verified Complaint and Jury Demand in Massachusetts Superior Court.[2] The Defendants moved to dismiss, arguing that "the Partnership Agreement clearly provides that any dispute 'arising out of or relating to' the agreement must be arbitrated, and any non-arbitrable disputes must be brought before a Delaware court." (D.I. 12 at 4). During the August 29, 2017 argument on that motion, the following discussion transpired:

> **The Court**: All right. And then the parties are arguing over whether the arbitration clause is enforceable because it mentions a non-existent entity perhaps.
>
> **Mr. Salinger**: Well, not so much the arbitration clause, because I think the defendant would certainly be willing to jettison that.
>
> **The Court**: Okay.
>
> **Mr. Salinger**: It doesn't appear – it almost appears as though that was thrown in by whoever the drafter of this document was.

(D.I. 16, Ex 1, 2:20-3:4).

Thereafter, on September 28, 2017, the Massachusetts court dismissed the complaint with prejudice, finding that a review of the Partnership Agreement and its addendums made clear "that the parties intended to arbitrate their disputes, and also acts[] to deprive this court of jurisdiction, as any non-arbitrable disputes (which plaintiff asserts this matter is) must be litigated in Delaware." (D.I. 14 at 3-4). On January 30, 2018, an entry was made on the Massachusetts docket of an endorsement stating Defendants, "at oral argument, waived the arbitration clause defense."

---

[2]   The Court takes judicial notice of the prior action in Massachusetts Superior Court and considers matters of public record, including filings and rulings, therefrom. *See Buck v. Hampton Twp. School Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

3

(D.I. 16, Ex. 2 at 1). Then on February 27, 2018, in response to Plaintiffs' motion to clarify judgment, the Massachusetts court entered an Amended Judgment clarifying:

> "Paragraph a) of Section 13 [of Addendum II] requires that the agreement is to be governed by and construed under the laws of Delaware, and that the Delaware Courts shall have 'exclusive jurisdiction to adjudicate any non-arbitrable dispute arising out of this agreement.' ***This paragraph confirms that the parties intended to arbitrate their disputes***, and also acts to deprive this court of jurisdiction, as any non-arbitrable disputes (which plaintiff asserts this matter is) must be litigated in Delaware.

(D.I. 15) (emphasis added).

On April 11, 2018, Plaintiffs filed the Complaint in this action (D.I. 1), asserting eleven counts, including fraudulent inducement, false advertising, violation of Delaware Uniform Deceptive Trade Practices Act, violation of Delaware Consumer Fraud Act, breach of contract, breach of implied covenant of good faith and fair dealing, intentional interference with advantageous business relations, indemnification, fraud, fraudulent transfer, and "successor liability." (D.I. 1). On May 25, 2018, Defendants moved to dismiss the Complaint, arguing that the parties are contractually required to arbitrate this dispute, or, alternatively, that each count fails to state a claim upon which relief may be granted. (D.I. 11). Plaintiffs opposed the motion but noted that they "agree to dismiss Count III (violation of Delaware Uniform Deceptive Trade Practices Act, 6 Del. C. § 2532); Count IV (violation of Delaware Consumer Fraud Act, 6 Del. C. § 2513 *et seq*.); and Count VIII (indemnification) without prejudice at this stage." (D.I. 16 at 20 n.17). Based on Plaintiffs' representations, the Court treats the motion as to those counts as unopposed, and those counts will be dismissed without prejudice. The Court addresses the remaining counts below.

## II. <u>LEGAL STANDARDS</u>

A complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007) (citing *Conley v. Gibson* 355 U.S. 41, 47 (1957); Fed. R. Civ. P. 8(a)(2)). When a complaint is challenged by a Rule 12(b)(6) motion to dismiss, the Court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the Court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210-11. Second, the Court determines "whether the facts alleged in the complaint are sufficient to show . . . a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). A claim is facially plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* Further, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of the plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotations omitted).

"The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). The Court may grant a motion to dismiss only if, after "accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, [the] plaintiff is not entitled to relief." *Id.* "In deciding a Rule 12(b)(6) motion, a court must consider *only* the

5

complaint, exhibits attached to the complaint, matters of public record, as well as undisputed authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (emphasis added).

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, "creates a body of federal substantive law establishing and governing the duty to agreements to arbitrate disputes." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional Agreement Nos. 950548, 950549, 950646*, 584 F.3d 513, 522 (3d Cir. 2009). Section 3 of the FAA requires:

> [i]f any suit . . . [is] referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3. Thus, "upon being satisfied that the issue involved . . . is referable to arbitration," a district court must, upon application of one of the parties stay proceedings and compel arbitration. *Id.* Rather than stay proceedings, however, courts in this district have found that "district courts may dismiss an action if all the issues raised are arbitrable and must be submitted to arbitration." *See e.g. McNeal v. Glazman*, No. 17-1397 (RGA), 2018 WL 4109266 at *5 (D. Del. Aug. 29, 2018); *Ebner v. Financial Architects, Inc.*, 763 F. Supp. 2d 697, 699 (D. Del. 2011).

## III. **DISCUSSION**

Plaintiffs advance three arguments why they should not be compelled to arbitrate the claims in their Complaint: (1) the arbitration clause in the Partnership Agreement is void because it refers to the International Arbitrary Commission in New York City, a non-existent tribunal; (2) Defendants waived their right to arbitrate in the Massachusetts Superior Court case; and

6

(3) certain of the Complaint's claims against Defendants do not fall within the scope of the arbitration clause and are thus non-arbitrable. (D.I. 16). "[G]ateway dispute[s] about whether the parties are bound by a given arbitration clause raises a question of arbitrability [are] for a court to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (internal quotations omitted). "Similarly, a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court." *Id.* (citing *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 651-52 (1986)). So too, the Third Circuit has held that courts "decide[] questions of waiver based on litigation conduct instead of referring the issue to an arbitrator." *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 217-18 (3d Cir. 2007) ("we conclude the Supreme Court did not intend its pronouncements in *Howsam* and *Green Tree*[3] to upset the 'traditional rule' that courts, not arbitrators, should decide the question of whether a party has waived its right to arbitrate by actively litigating the case in court.").

### A. Whether Defendants' Waived Their Rights to Arbitrate

Plaintiffs argue that "Defendants waived the *right to arbitrate*, not merely the *right to argue* whether arbitration is contractually required" based on the responses of their counsel during oral argument on a motion to dismiss before the Massachusetts Superior Court. (D.I. 16 at 6 (original emphasis)). Plaintiffs cite no legal support for this broad prohibition. Defendants argue that the exchange during oral argument in Massachusetts reflects their decision "not to press the arbitration clause argument as a reason to dismiss the Massachusetts litigation," which was later dismissed citing a lack of jurisdiction and noting "the parties inten[t] to arbitrate their disputes." (D.I. 17 at 1-2).

---

[3] *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003) (plurality opinion).

7

"[W]aiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). The Third Circuit has recognized that certain actions (or inactions) may result in a waiver and that in such circumstances "[p]rejudice is the touchstone for determining whether the right to arbitrate has been waived." *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.3d 912, 925 (3d Cir. 1992). In evaluating prejudice, the Court must consider: "[1] the timeliness or lack thereof of a motion to arbitrate . . . [; 2] the degree to which the party seeking to compel arbitration [or to stay court proceedings pending arbitration] has contested the merits of its opponent's claims; [3] whether that party has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court proceedings; [4] the extent of its non-merits motion practice; [5] its assent to the [trial] court's pretrial orders; and [6] the extent to which both parties have engaged in discovery." *Ehleiter*, 482 F.3d at 222 (citing *Hoxworth*, 980 F.2d at 926-27). "[W]aiver will normally be found only 'where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery." *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1068-69 (3d Cir. 1995) (citing *Gavlik Const. Co. v. H.F. Campbell Co.*, 526 F.2d 777, 783 (3d Cir.1975)).

Under the facts in this case, the Court does not find that Defendants waived their right to have this dispute arbitrated. Neither the actions nor the arguments before the Massachusetts Superior Court amount to an express waiver of Defendants' right to arbitrate the claims raised by Plaintiffs. Plaintiffs allege that "defendants, at oral argument, waived the arbitration clause defense." (D.I. 16 at 6). A review of the exchange between the Massachusetts Judge and Defendants' counsel, however, does not clearly articulate such a waiver. Primarily, Defendants' counsel responds that "defendant would certainly be willing to jettison that" with respect to a

question from the judge asking if "the parties are arguing over whether the arbitration clause is enforceable because it mentions a nonexistent entity." (D.I. 16, Ex. 1, 2:20-25). The judge later noted to Defendants that "[y]ou're not really pushing the arbitration . . . argument anymore," and Defendants' counsel responds "[n]o. . . . Waived." (*Id.* at 6:20-7:1). These exchanges, viewed in the context of the entire argument, do not suggest that Defendants were intentionally relinquishing or abandoning their arbitration position for all time. Indeed, even after that exchange, the Massachusetts court noted that "the parties intended to arbitrate their disputes." (D.I. 15, *see also* D.I. 14 at 3).

Additionally, the Court does not find that Defendants implicitly waived arbitration under the standard set forth in *Hoxworth*. There is no indication that Plaintiffs have or will be prejudiced by the Court compelling arbitration. Plaintiffs knew during the Massachusetts action that Defendants sought arbitration, and that court explicitly found the intent of the parties in the Partnership Agreement was to arbitrate claims. So too, once Plaintiffs filed their Complaint in this case, Defendants quickly asserted the arbitration clause. This case is still in the early stages. No discovery has occurred. In light of this, the Court cannot find that Defendants implicitly waived their right to arbitrate. Having found no explicit or implicit waiver, the Court finds that the record does not support a finding that Defendants waived their rights to arbitrate those claims arising from or related to the Partnership Agreement.

### B. Whether the Arbitration Clause is Void for Referencing a Non-Existent Tribunal

Plaintiffs argue that "the arbitration clause at issue refers to a non-existent arbitration forum and is thus a legal nullity." (D.I. 16 at 7). Further, Plaintiffs seek to distinguish this case from those relied upon by Defendants because "[u]nlike the challenged arbitration clauses in the cases

9

cited . . ., which selected arbitration forums that *no longer existed*, the arbitration forum at issue here *never existed*."[4]  (*Id.* at 7).

While the designation of a non-existent arbitration forum in an arbitration clause, makes the forum selection provision itself "null and void," that is not dispositive of the arbitration issue. *Control Screening LLC v. Tech. Application & Prod. Co. (Tecapro), HCMC-Vietnam*, 687 F.3d 163, 170 (3d Cir. 2012).  The court must still determine whether "there is sufficient indication elsewhere in the contract of the parties' intent to arbitrate."  *Id.*  In *Control Screening LLC*, the agreement at issue also contained a provision stating "[d]ecision of arbitration shall be final and binding," and a cost-shifting provision.  *Id.*  This, the court held, was sufficient to show that the parties intended to arbitrate.  *Id.*

So too, here, the parties agreed that "[t]he Parties shall exercise their best efforts to resolve by negotiation any and all disputes, controversies or differences between them arising out of or relating to this Agreement.  All disputes, controversies or differences between parties that are not settled by negotiation shall be submitted to the International Arbitrary Commission in New York City, U.S.A."  (D.I. 1, Ex. A  ¶ 19(D)).  The paragraph also sets forth provision for three arbiters, the method of selection thereof, and states "[t]he arbitral award is final and binding upon to (sic) both parties."  *Id.*  Additionally, in Addendum II, the parties also agreed to a venue selection clause stating "federal and state courts located in Delaware, USA shall have exclusive jurisdiction to adjudicate any non-arbitrable dispute arising out of this Agreement."  (*Id.* at Addendum II ¶ 13(a)). These factors provide sufficient indicia that the parties intended to arbitrate any and all disputes "arising out of or relating to" the Partnership Agreement.  Thus, although the "International

---

[4] Contrary to Plaintiffs' argument, in *Control Screening LLC*, the Third Circuit found "the parties agreed to arbitrate in a particular place – namely the 'International Arbitration Center of European countries'" – which "did not exist."  687 F.3d at 170.

10

Arbitrary Commission in New York City, U.S.A." is a non-existent entity, the parties' arbitration clause is otherwise valid and exhibits an intent to arbitrate. The parties, thus, must submit any arbitrable disputes to arbitration.

> ### C. Whether The Complaint Contains Arbitrable Claims

"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The Supreme Court of Delaware has held that "the public policy of Delaware favors arbitration." *SBC Interactive, Inc. v. Corp. Media Partners*, 714 A.2d 758, 761 (Del. 1998) (citing *Graham v. State Farm Ins. Co.*, 565 A.2d 908, 911 (Del. 1989)). "In determining arbitrability, the courts are confined to ascertaining whether the dispute is one that, on its face, falls within the arbitration clause of the contract. Courts may not consider any aspect of the merits of the claim sought to be arbitrated, no matter how frivolous they appear. Any doubt as to arbitrability is to be resolved in favor of arbitration." *Id.* (internal citations omitted). Moreover, "[w]hen the arbitrability of a claim is disputed, the court is faced with two issues. First, the court must determine whether the arbitration clause is broad or narrow in scope. Second, the court must apply the relevant scope of the provision to the asserted legal claim to determine whether the claim falls within the scope of the contractual provisions that require arbitration." *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 155 (Del. 2002).

Here, the Partnership Agreement provides that the "Parties shall exercise their best efforts to resolve by negotiation any and all disputes, controversies or differences between them arising out of or relating to this Agreement. All disputes, controversies or differences between the parties that are not settled by negotiation shall be submitted" to arbitration. (D.I. 1, Ex A ¶ 19(D)). Courts

in Delaware have found language similar to the "arising out of or relating to" language to be indicative of a broad arbitration clause. *See e.g.*, *Karish v. SI International, Inc.*, No. 19501, 2002 WL 1402303 at *4, (Del. Ch. June 24, 2002); *Detroit Medical Center v. Provider Healthnet Services, Inc.*, 269 F. Supp. 2d 487, 492 (D. Del. 2003). So too, here, the Court finds the Partnership Agreement's arbitration clause "any and all disputes . . . arising out of or relating to" the Partnership Agreement to be broad.

As to whether asserted claims fall within the broad arbitration clause, "[a]n arbitration clause, no matter how broadly construed, can extend only so far as the series of obligations set forth in the underlying agreement" meaning such clauses "should be applied only to claims that bear on the duties and obligations under the [a]greement." *Parfi*, 817 A.2d at 156. To determine whether the claims "bear on the duties and obligations" of the Partnership Agreement, the Court must determine whether the claims "would be independently and separately assertable" had there been no agreement between the parties. *Id.* at 157. Here, Plaintiffs argue that Counts I, II, III, IV, VIII, IX, X, and XI are not arbitrable because they "are premised on Defendants' peddling counterfeit technology, and are completely separate from the contractual rights otherwise afforded the parties in the Partnership Agreement." (D.I. 16 at 9-10). Plaintiffs do not seem to be a dispute that Counts V, VI, and VII are arbitrable, but assert that they "are only asserted in the alternative." (D.I. 16 at 10). As noted above (p. 4), Plaintiffs have agreed to dismiss Count III, Count IV, and Count VIII without prejudice. Thus, the Court only addresses the arbitrability of the remaining counts – I, II, IX, X, and XI – for which arbitrability is in question.

As an initial matter, the Plaintiffs summarize the "Nature of the Action" as relating to the Partnership Agreement entered:

> This action stems from multiple, fundamental misrepresentations made by the Defendants to fraudulently induce Hedinger to enter into a partnership agreement,

> by falsely representing that Hedinger would be an exclusive distributor of Defendants' purported technology (despite the fact that the Defendants were clandestinely engaged in parallel, competing efforts to sell or license this same technology either directly and/or through other dealers), and, as later learned, by pawning off their counterfeit technology as the genuine article, the latter of which the Defendants are not authorized to sell, license, or distribute in the first place.

(D.I. 1 ¶ 1).

Then in each of the asserted counts, including counts I, II, IX, X, and XI, Plaintiffs begin by stating: "Hedinger repeats and realleges each of the preceding allegations as if set forth herein," and end by stating that Hedinger was damaged due to Defendants' actions. (D.I. 1). Plaintiffs' explanation of the nature of this action as combined with the first paragraph of each count stating it "repeats and realleges each of the preceding allegations," suggests that all claims alleged within the Complaint are directly related to, and stem from, the creation of the Partnership Agreement between the parties and would not be independently and separately assertable had there been no agreement between Plaintiffs and Defendants. Though this alone is likely sufficient to characterize the remaining counts as arbitrable, the Court will also review each claim individually.

Count I (Fraudulent Inducement) and Count IX (Fraud) are arbitrable. "Under Delaware and federal law, a party cannot escape a valid . . . arbitration clause[] by arguing that the underlying contract was fraudulently induced or invalid for some reason unrelated to the forum selection or arbitration clause itself." *Carlyle Inv. Mgmt. L.L.C. v. Nat'l Indus. Grp. (Holding)*, No. 5527–CS, 2012 WL 4847089, at *10 (Del. Ch. Oct. 11, 2012), *aff'd*, 67 A.3d 373 (Del. 2013); *see also Karish v. SI Intern., Inc.*, No. 19501, 2002 WL 1402303 at *4 (Del. Ch. June 24, 2002) ("A claim of fraud in the inducement of the contract generally – as opposed to the arbitration clause itself – is for the arbitrators and not for the courts.") (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967)). Here, Counts I and IX allege that Defendants made misrepresentations "with the intent that Hedinger would rely on [them] when deciding to enter into contractual

agreements with [Defendants]" and "in order to induce Hedinger to enter into the Partnership Agreement," respectively. (D.I. 1 ¶¶ 51, 88). In both instances, Plaintiffs' attempt to undermine the arbitration clause by claiming that the underlying contract was fraudulently induced. Plaintiffs do not assert that the arbitration clause *itself* was fraudulently induced (apart from it being in the overall agreement) and thus Count I and Count IX must be adjudicated by an arbitrator, not this Court.

Count II (False Advertising Under 15 U.S.C. § 1125(a)) is also directly related to the Partnership Agreement and thus arbitrable. Count II alleges that Defendants' "conduct as aforesaid constitutes use of false designation of origin, false or misleading descriptions of fact, and/or false or misleading representations of fact that are likely to cause confusion, to cause mistake or to deceive" and "falsely pawn off their Counterfeit Brain Fingerprinting Technology . . . and otherwise persistently misrepresent the nature, characteristics, and qualities of their BWS technology" in violation of 15 U.S.C. § 1125(a). (D.I. 1 ¶¶ 55-56). In their response to the motion, Plaintiffs state the "false advertising proximately caused Plaintiffs reputational injury, by unwittingly being associated with a sham company peddling counterfeit technology." (D.I. 16 at n.13). Thus, by their own admission, the injury claimed in Count II is directly related to the creation of Plaintiffs' association with the Defendants, as it occurred through the execution of the Partnership Agreement. The claim is dependent on the Partnership Agreement and is not independent or separable from the Partnership Agreement. Thus, the Court finds that this claim is arbitrable.

Count X alleges "[u]pon information and belief, on or about March 22, 2017, BWS transferred all or substantially all of its assets ("Assets") to BWS-Inc." (D.I. 1 ¶ 97). Plaintiffs allege "[this t]ransfer was made with the actual intent to hinder, delay and/or defraud BWS's

creditors, including Hedinger." (*Id.* ¶ 105). Count XI seeks to impose liability onto BWS-Inc as "a mere continuation of the business of BWS and/or [] a successor of BWS by result of a *de facto* merger" therefore making it "liable for the debts and liabilities owed by BWS to Hedinger as the successors-in-interest to BWS." (*Id.* ¶¶ 107-14). The liabilities allegedly owed to Plaintiffs in each of these counts are premised on the contention that Defendants owe Plaintiffs damages for those claims that the Court has already determined arbitrable. Thus, because these claims are dependent on others which arise from, or are related to, the Partnership Agreement, they are not independently and separately assertable from the Partnership Agreement and are arbitrable.

As noted above, Plaintiffs do not contest that Counts V, VI, and VII are arbitrable. Instead, they assert that the counts "are only asserted in the alternative." (D.I. 16 at 10). Regardless of this characterization, these claims are arbitrable and should only be put before a panel of arbiters, as contractually required, and not determined by this Court. Counts V and VI allege that Defendants failed to abide by the duties and obligations of the Partnership Agreement. Similarly, Count VII, and its supporting facts, contend that Defendants interfered with a relationship between Plaintiffs and a buyer, who Plaintiffs contacted "in anticipation of the [] Partnership Agreement, and in order to gauge interest in the BWS Technology." (D.I. 1 ¶ 18). The relationship in which Defendants are alleged to have interfered was established *because of* the Partnership Agreement. It is thus clear that the claim is directly related and inseparable from the agreement and its arbitration clause. For these reasons, the Court finds that Counts V, VI, and VII are arbitrable and any adjudication thereon must be undertaken by arbitration as set forth in the Partnership Agreement.

## IV. CONCLUSION

For the forgoing reasons, Defendants' Motion to Dismiss is GRANTED without prejudice and the parties are compelled to arbitrate the disputes raised in the Complaint. An appropriate order will follow.